## LOUIS HENRY COOK v. STATE.

No. A-10502. Dec. 19, 1945.

(164 P. 2d 652.)

338

 ██

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and George Miskovsky, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, P. J. Defendant, Louis Henry Cook, was charged in the district court of Oklahoma county with the crime of assault with intent to kill, was tried, convicted of assault with a dangerous weapon, and sentenced to serve a term of five years in the State Penitentiary. From this judgment and sentence he has appealed.

In the brief of defendant, all assignments of error are discussed together, and will be so considered here.

A brief statement of the facts as revealed by the record is necessary. The defendant had married in September, 1936. Prior to their marriage, his wife informed him that the prosecuting witness, James Houston Johnson, had raped her when she was 16 years of age. On July 5, 1943, the defendant went to the home of the prosecuting witness, whom he had never before known, and asked if his name was Johnson. Upon being told that it was, defendant stated, "I think you owe my wife an apology." He then related what his wife had told him about witness having raped her seven years prior thereto. After a lengthy discussion, in which Johnson

told him that nothing like that had occurred, and that he did not even know his wife, the defendant left, stating to the witness, "Let's just forget it."

On July 9, 1943, the defendant returned to the home of the prosecuting witness, and when Mr. Johnson opened his door, defendant stated, "I have decided that you are the one." Witness invited him to come in and talk it over, and he answered: "No. You talked me out of this once before, and we are not going to talk it over this time." Just as the wife of Johnson entered the room, defendant pulled a gun and put it to Johnson's back, and said, "Let's get going." They started out of the front door, and Johnson stumbled, and when they came near the automobile, defendant pushed Johnson, and he fell, and defendant shot him through the head. Defendant immediately entered his car and drove away, and soon appeared at the police headquarters and gave himself up. On the same evening he made a written statement to the officers, and this statement was introduced in evidence.

Mrs. L. C. Walbracht testified for the state. She lived in one side of the duplex occupied by the Johnsons, and witnessed the difficulty from the time defendant and Mr. Johnson went out of the house onto the porch. She followed them, and attempted to keep defendant from taking Mr. Johnson to his automobile, and from shooting him. Her testimony was that the prosecuting witness did nothing but comply with the orders of defendant; that he said nothing to defendant, and defendant shot him without cause. The wife of the prosecuting witness corroborated the testimony of her husband and of Mrs. Valbracht. Defendant also corroborated this testimony up to the point of the shooting, but testified that the prosecuting witness said his wife was a liar, and that

everything went black, and he did not know or realize what had happened until he awoke in a sanatorium in Oklahoma City, some time thereafter.

Defendant's wife testified that the prosecuting witness had raped her seven years prior to this difficulty, in an apartment house in Oklahoma City. This occurred some time before her marriage to defendant. She told defendant about it prior to their marriage, and they had talked about it at intervals thereafter. She had not told her mother or sister with whom she lived until shortly before July 5, 1943. The mother-in-law of defendant, two of his sisters and his wife all testified to certain peculiarities of defendant, and as to his being moody just prior to the time of his first visit to the home of the prosecuting witness on July 5, 1943. Other witnesses, including one doctor, also testified in behalf of the defendant, and a number of witnesses testified as to his previous good reputation.

The defense presented was that of temporary insanity.

The record reveals that defendant was released from the county jail of Oklahoma county on the application of the county attorney, for the reason that defendant had been ordered committed to the State Hospital for the Insane at Norman, Oklahoma; and with the request that a hold order be entered for his return to Oklahoma county to answer a charge of assault with intent to kill at such time as he might be released from said hospital. This order was made on July 28, 1943, and defendant was returned to Oklahoma county and was tried on September 22, 1943.

It has often been held that an order entered in the county court sending one to the state insane asylum for

treatment is not proof of insanity, and that the order so made is not admissible in evidence where one is on trial, and the issue of insanity is involved. Rice v. State, 80 Okla. Cr. 277, 158 P. 2d 912; Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205; In re Maas, 10 Okla. 302, 61 P. 1067.

Dr. D. W. Griffin, superintendent of the Hospital at Norman, was called as a witness by the defendant. His testimony was that defendant was sane, and that he knew right from wrong, and was able to properly defend himself. He testified that defendant was what is known as "a marginal psychopath, and likely later on may degenerate into a true form of insanity."

The question of insanity was properly submitted to the jury, and the evidence being sufficient to sustain the judgment and sentence rendered, this court will not reverse the same.

It is also contended that the court erred in refusing to give certain requested instructions offered by the defendant, and in refusing to permit the asking of certain hypothetical questions.

An examination of the record reveals that the court permitted the hypothetical question asked by defendant to be answered; and that a number of the requested instructions were fully covered by the court's general instructions. Other requested instructions were not proper statements of the law as applicable to the facts here presented. Other requests were that the court charged the jury with reference to certain questions, but no instruction was prepared concerning these issues. A careful examination of the instructions of the court reveals that they fully and fairly covered the law as applied to the issues here presented, and the defendant was in no wise prejudiced by the instructions given in this case.

342

The contention that the judgment and sentence entered in this case is "cruel, unusual, and unjustified," and that the defendant should be given a suspended sentence cannot be upheld. This court does not have the power or authority to direct the trial court to suspend the sentence in any case. This defendant was charged with assault with attempt to kill, which provides a penalty of not to exceed ten years in the penitentiary. The jury found him guilty of "assault with a dangerous weapon," which is an included offense, and carries a penalty of not to exceed five years in the State Penitentiary. This was the punishment assessed by the jury. The evidence here presented would have justified the sustaining of a verdict of assault with intent to kill. The jury was very lenient with defendant, and we find no reason to modify the verdict in this case.

For the reasons above stated, the judgment and sentence of the district court of Oklahoma county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.